I'm advised by the clerk that all of those who are supposed to be present are present. And so we'll proceed without calling the day calendar. Our first case this morning is number 21 28 22 Congressional Rabbinical College versus Village of Pomona. Thank you. Good morning, your honors. May it please the court. Roman stores are for the plaintiff appellants. Just one second, please. Jasmine, I think you've given us the wrong. Thank you very much. I want to make sure I have your name right. Thank you. All right. Please proceed. Your honors. I believe that this appeal presents a very simple issue. We have a situation here where there are certain village laws that absolutely prohibit a particular religious use on specific property. It is the village has admitted that the that that the property owner here cannot obtain any permits or variances in order to be able to exercise their religious exercise on the on this property that the village laws absolutely prohibited. Yet the village argues in the district court held. Is that in the answer to the complaint? It's not in the answer to the complaint. It's in various admissions that we have. We filed along with the response to their motion to dismiss below. We have the statements of the village attorney. We have their direct testimony that that has been has been submitted. We have other statements in in the record appendix page 777 where the village has again admitted. This was back in a hearing based on a motion to dismiss in the prior case where the where the the the village has said that a use of variance cannot be obtained. It simply is not at issue. And what about through a text amendment? I mean, you are the petition that you submitted sought to strike the entire entirety of the two local rules. But you didn't ask for an amendment that would create an exception, for example, with regard to your institution's accreditation situation. Could you have done that? And if not, why not? Well, Your Honor, first of all, we did submit a petition for a text amendment to repeal those laws. If that petition would have been granted, we would have been able to build. That was very broad. You sought to strike them entirely. And the village's response is that would be unconstitutional under New York law. Couldn't you have submitted a more focused petition for text amendment that would speak directly to the two provisions, the accreditation as well as the family dormitory use that are of particular concern? Your Honor, that's that's exactly at the heart of this problem. This would be a legislative change. We would be asking the village to change its laws. But my question is, could you have done that? We could have submitted a different legislative petition. Yes. Because looking at what we decided in 2019, I don't see really what has changed other than that you have, that Pactel was decided and we can debate the meaning of that, as well as that you submitted this text amendment, which proposed to strike the laws in their entirety rather than in a focused way that would address your own, you know, your institution's own concerns. So I don't see how we're past what we said in 2019 with regard to a specific proposal and of any kind. And I think that's where Pactel really comes into play here. What Pactel says is that all a plaintiff must show is that there is no question about how the regulations at issue apply to the particular land in question. Not can the regulations at issue theoretically be changed. But Pactel was a regulatory takings case, as you know, and there the landowners or the co-op owners had applied for an exception to the leasehold requirement that was imposed by the zoning authority and the initial decision maker. It was thereafter that they were seeking compensation. So they had taken action of a type that you haven't taken here, it seems to me. Your Honor, respectfully, they did not take that action. They filed a late application, what was described as a token exemption request. They knew that the relevant agency could not grant, as it was described by the Ninth Circuit. They filed it six months after the final. The Supreme Court said the petitioners requested that the city either excuse them from executing the lifetime lease or compensate them for the lease. The city refused both requests and that that was the initial decision maker who made that decision. That was clear. And then they were seeking compensation. And the question was whether they had to exhaust other administrative remedies other than those required just to obtain the final decision. So it seems to me that's a different context than presented here where you haven't asked the village itself to, for any kind of either variance or interpretation or to amend in a very focused way the two local laws that limit your development. Well, I believe there's a number of responses to that. One is that they were actually applying for something. Here there is nothing to apply for. The only issue is could the law be changed. In Pactel, theoretically, they could have petitioned the city legislature to change the laws that are at issue, maybe even the state laws, but that was not at issue at all. Second of all, the application that they did file was not correct. The Ninth Circuit recognized that it was not done properly. It was done after the conversion was already approved, and it was done seven months after they had already agreed to provide this lifetime lease. So then all this time later they submitted this token exemption request, as the Ninth Circuit described it, that they knew the agency could not grant. At the very least, that puts them in the same position as the petition for repeal. That's what the Supreme Court decision turned on. The Supreme Court decision focused on the notion that they were being required to exhaust separate administrative remedies for compensation, and it struck that understanding of the Ninth Circuit. But then even come back still to what you can obtain from the town. Can you not submit a petition for a text amendment that would strike, as to the Tardico facility, the requirements of state accreditation and the dormitory prescription of having more than one kitchen? Is that possible? Is that something the state, the village could entertain and act on? It is possible that we could do that, which is what your Honor says, which is to change the laws that are being challenged here. We could petition the village to change the zoning laws that prohibit outright our use. If that were the standard here for ripeness, then no case would ever be ripe. How can one speak of finality of a legislative position? This is a village still. This is a small town in which the trustees, as I understand it, have passed these local laws. And so they shape them. This is not like you have to go to the state legislature. This is, in effect, like a Board of Zoning Appeals decision or application for a variance. No, it's not, Your Honor. I'm sorry. This is not the application of, again using the language of Pactel, the regulations at issue. This is creating new regulations. There's never been a decision of this court other than perhaps the earlier Tardikov decision that suggests, or the Supreme Court that suggests, that one must attempt to change the regulations at issue in order for a federal court to have jurisdiction over a challenge to the laws at issue. Let me ask you another question. We said in 2019 that your claim was not ripe, that your injury is merely conjectural, and that that doesn't suffice for your free exercise claim, and that the four challenge laws prevent it from building and operating as you would like. But you've never submitted a formal proposal for the building project, applied for a permit, or engaged in any other kind of conduct that would implicate or invoke the operation of the challenge zoning laws. That's the law of the case here. And I don't see what has changed other than that you applied in a single-sentence application for a text amendment that would strike the laws in their entirety. That doesn't strike me as conforming to what we directed in 2019. Why am I wrong in my understanding? Your Honor, I see my time has up. Please take your time to respond. Thank you. The language about a formal proposal, there is no such thing as a formal proposal. You can apply for a variance. You can apply for a special permit. You can apply for a text amendment. We could not apply for a variance or special permit. We did apply for a text amendment, which would have invoked the operation of the existing laws. If that petition were granted, those laws would no longer have existed, and we would be able to build the rabbinical college. The fact that- I'm going to interrupt for just one second, because if you applied for the- if you're saying that one thing you could do is petition for a text amendment to strike the laws in their entirety, why could you not petition for a text amendment that would strike them only insofar as they bar your development? Because, Your Honor, where does that end? If we would have submitted a different application, that would have been rejected. The village could say, well, you could have submitted something else, and so on and so on and so on. There is no legislative finality concept that exists. It is different than an application for a variance or an application for a special permit, which is granted or denied. The village legislature has the ability to consider an infinite combination of possibilities, and to say that Article III standing doesn't apply until all of those possibilities are exhausted doesn't make any sense, and, again, has no support in the precedence of this court or the Supreme Court. All right. I've been talking. Do my colleagues have any questions? All right. We'll hear from the town. Thank you, Your Honor. Good morning, Your Honor. May it please the court, Brian Nugent, Farrick Nugent McCartney, representing the defendant of Pelley's Village of Pomona and the Board of Trustees of the village. Your Honor, I would agree with Mr. Storzer's first statement at the podium that this case is a simple issue. In this case, there are really two issues that have arisen since this court's 2019 decision. One is a factual one, which is the text amendment that Tartikoff submitted in February of 2020, and the second is a legal issue. They argue that Pacto affected some sweeping change in the law. The text amendment that was submitted by Tartikoff could not be acted upon by the village under any circumstance, and Tartikoff acknowledges that in their complaint, where they cite the Bagnardi case, and they cite exactly what Bagnardi said, that a total exclusion of colleges and universities is unconstitutional and beyond the scope of a village's zoning authority. So when Tartikoff filed that petition, they knew very well that under any circumstances, the village could not enact that law because it was unconstitutional and because Bagnardi already told us the village did not have the authority to enact that. Tartikoff's only response to that is this suggestion that that law would not have been enforceable and that they could somehow still build their project. But the problem with that argument is you never get your enforceability because the village could not enact the law in the first place. So, Mr. Nugent, exactly what should they have done? I saw in your brief that you referred to different pathways that the district court described, but it's not clear to me exactly what they should have done when faced with the local law 5 that proscribes non-accredited institutions and proscribes the kind of family dwelling situation that they have envisioned. What exactly should they have done? Your Honor, I believe the law is clear that Tartikoff should have filed an application, and when we speak of a development proposal, that's because in any land use case, that may consist of several filings, a site plan, a special permit, a text amendment may be submitted at the same time. But the law is, and as I view Tartikoff, they're still standing behind the starting line. All of the cases we look at... But I really want you to describe exactly what the path to a final decision is because it's unclear from the briefs what they need to do and how much they need to spend, how far they need to go. It's very easy to say they didn't do anything other than file this general petition to strike the local laws. But an application, a use, is a letter enough? Do they have to give you blueprints with environmental descriptions of how they're going to comply with local environmental laws? Exactly what do they need to do if they go home without satisfaction here today? They need to file an application. There is nothing in the record ever that says Tartikoff was prohibited from filing an application. When I say that, they would require a special permit and site plan, and they may choose to at the same time file a proper text amendment petition that for 14 years they spoke about two specific provisions of the village code that prevented them from going forward with this project. So the application, would that be blueprints and environmental? I mean, how large an undertaking is that? Is that a one-page letter saying, I recognize that you have these provisions in Local Law 5 that seem to bar our development. We ask for an exemption. I believe it would be a site plan. It would show what exactly this proposed development is because, Your Honor, there may be non-constitutional reasons that this matter resolves in the give-and-take land use process. There may be environmental reasons that this project never comes to fruition. Without that submission and the opportunity for the village to review it and examine these issues, even if there's a constitutional claim as to the village's regulations, I believe the village should have the first opportunity to hear those assertions. You're demanding that they spend potentially hundreds of thousands of dollars to develop a detailed site plan that is detailed in an environmental way when, on the face of the local law, they're proscribed from doing any kind of development because they're not accredited by the state and they can't do the kind of development they want because the families can't live as they envision. Why should they spend that money to be just shut down years from now after having developed the kind of detailed plan you're describing? I think the problem with that argument, Your Honor, is if we accepted that all a plaintiff needs to do is show that they own a piece of property and that the facial text of a regulation prohibits exactly what they want to build, they would never need to come to the village or the town and submit any application and they could proceed directly to the federal court and claim that they now have standing because that regulation prohibits what they want to build. The way those issues are addressed is by the filing of an application. That opens the conversation. That crosses the starting line. But are you saying that it's possible that their application could be granted, notwithstanding the provisions of Local Law 5? I think there would have to be some either change in the legislation or if they present an argument to the village and say that that law as applied would be unconstitutional as to them, the village is the first body that should evaluate that and make a determination. So I do believe they are trying to make an as-applied argument. They cast it as a facial argument, but all throughout the complaint, they're saying that as applied to us, this is unconstitutional. We want to run this educational institution and here are the prerequisites for us and we're never going to be accredited by the state because of the nature of our institution. So you're saying that it's still possible that their application could be granted, notwithstanding those provisions. Your Honor, I would. As applied challenge, we shouldn't even reach. Is that right? I believe you should not reach it. I believe that there are a lot of avenues that land use applications can take. It is not enough to simply say the regulations say I can't do this and therefore I have standing. This isn't a question of whether Tartikoff may ultimately be back in this court. But this is different from a setback requirement. You know, this is not something that you negotiate. Either they're accredited or they're not accredited. I don't really understand how that would, you know, why it wouldn't be futile. Because the status of this case today, there is no final definitive position of the village with respect to those regulations and their application to Tartikoff. There hasn't been, and unlike every other case that is cited or we could talk about, whether it be Pactel or Williams or McDonald, they all were past the starting line. The Pactels filed an application in their case. And even though it was an exhaustion of administrative remedies case, Tartikoff, again, is still behind the starting line. But in Pactel, all they had to do was write a letter saying please exempt us. And they got a, you know, a two-line answer back, I presume, saying no. Here you're asking for a, you know, site plan, environmental assessment, hundreds of thousands of dollars. We are the face of the law. Your Honor, the application you're referring to, that was the exhaustion question later on that letter. The initial application was an application to convert their units to the condominium. And then they raised the issue later of the lifetime lease requirement when they decided they no longer wished to execute that. But Tartikoff did file the initial application. And that is what's missing in this case. There has never been any submission of any document to the village of Pomona that identifies a proposal or a project on Tartikoff's property. So that suggests that an application, if they wrote a two-page letter saying we want to build X, Y, and Z, here's what it would look like. And do you, you know, do you accept this? And that would be enough to create, you would deny that because it's not consistent with the local laws. And that would be enough to give them standing and make this dispute ripe. Is that right? I don't agree. I still stand by the position that they would need to file an application for a development just like anyone else would have to come to the village and submit that. And then these issues would come to fruition one way or the other, either be resolved non-constitutionally, or if the village disagreed, they would have the as-applied status that they have been lacking for many years. I see my time is almost up. But if I may, just address the Pactel decision briefly. The Pactel decision, this court does not need to go beyond the first paragraph of that decision to see that that decision was, the holding in that decision was once a municipality, in that case the city, has reached a conclusive position that a takings claim plaintiff need not exhaust administrative remedies. Now, they go on to say Tartikoff suggests that Pactel was some change in the law or somehow affected an overruling of longstanding law with respect to finality in an application. But that very first paragraph, the Pactel court tells the reader that the reason that they overruled the Ninth Circuit was because the Ninth Circuit's requirement of exhaustion was at odds with the settled rule. And I quote that. That's the language from Pactel, the settled rule. So Pactel- Pactel goes on to say the finality requirement is relatively modest. All a plaintiff must show is that there is no question about how the regulations at issue apply to the particular land in question. Why doesn't that support your opponent's position? Because our opponents still lack a final definitive position of the village of any sort with respect to a land use application. They don't know how the regulations are applied. What they do know is what the regulations say. But Tartikoff has largely been arguing against the text of the regulation, but not any position that was ever taken by the village. And in this complaint- But part of what they say, though, is that the village, in light of the clarity of the language of the regulation, the village does not have the discretion to apply it other than as the text provides. Why is that incorrect? Your Honor, I think that cases like McDonald and Sunrise Detox suggest otherwise, that there is a give and take. What the village takes on one hand, they can give with the other. There is a process that should occur at the village's village hall before it comes to a federal court to- But again, I don't understand how there can be give and take about the requirement that an entity be accredited. How can that be negotiated? What's the intermediate position? Well, I think the question there becomes, is the accreditation requirement itself unconstitutional as applied to Tartikoff? But that question should initially be presented to the village. When it comes in for the land use application, like many plaintiffs that file land use applications or developers, they ask the questions, they say, here's my problem, and then the conversation begins. And the forks in the road and the paths it may take, there are many. But I think that the law is clear that they need to cross the starting line before they get to questions of exhaustion and finality and these other issues. And I see that my time is up. Are there any other questions? I do have, excuse me, just one question. With regard to this, your adversary argues that the village has admitted that it lacks the discretion to grant them any type of relief or to apply the statute in some other way. Has there been, either through the papers or what, in filings, an admission of that kind? Well, first, your honor, I would suggest that that argument and some of those early arguments from my opponent are a re-argument of the 2019 case because it's based on facts that were already litigated and decided. I don't know that the village in the record said it didn't have any discretion. I think that's been Tartikoff's position. Because obviously the village has discretion to either change its laws or to not apply them to a particular land applicant if there is a substantial burden issue or an unconstitutional issue. So to say the village that creates the very laws doesn't have any discretion, I don't think that's true. I think that the regulations, it's clear that as written, those regulations would not allow an unaccredited college. But I don't think that translates to plaintiffs coming to the court without ever coming to the village with the application in the first place to see if matters can be addressed at the local land use level where they should be. Thank you very much, your honor. Thank you very much. We'll hear rebuttal. Thank you, your honors. I think what the village is arguing is clearly a departure from established precedent in this court in Murphy v. New Milford decision. I didn't get to that in my initial argument, but that case really is instructive here. The court held a property owner, for example, will be excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile. That is, a property owner needs not pursue such applications when a zoning agency lacks discretion to grant variances. That is completely opposite to what the district court established as being a one futile application rule. I'm sorry. Can I just ask you, I mean, one of the things during your adversary's argument, One thing that Judge Carney raised was this idea of what's required, a two page letter, those types of things being okay. And I'm struck by the fact that there really, there's nothing of that kind. The cases you cite, it appears in all of those cases, there was something beyond this. What you've done here with this, this, you know, two sentence text amendment application and just the idea that maybe there are not requirements of appeal or multiple applications. Or exhaustion and all of that. I understand that. But here where you haven't submitted what seems to be a meaningful application, there hasn't even been the two page letter that they can reject. That's that doesn't seem consistent with what these cases are talking about. Well, again, Murphy says that you do not have to submit it where the decision maker lacks discretion. The decision makers here admitted that they lack discretion. Again, the appendix pages 402, 403, 406. We have the testimony of the village saying we cannot do this. A permit, special permit is not obtainable by TARDACOV. That's in their answers to our request for admissions at appendix pages 526 and 512. Variance cannot be granted with the sites I just gave the court. There is a specific legal standard for obtaining a variance and everybody here agrees that that standard cannot be met. So the application would be futile. And this is not simply a question of submitting. Just one second, please. The citations you just gave, those admissions, as you call them, were were made prior to our 2019 decision. Isn't that right? Yes, that is correct. And so our court was aware of those in finding that the finality requirement had not been met. Is that right? Yes, it would have been. So it has rejected your argument on that score? Prior to the Pactel decision, Your Honor. The requirement of submitting a futile application does have a serious consequence. There is a state environmental law, of course, in New York that is incredibly stringent that a party must have to go through in order to obtain a special permit or site plan approval. They have to go through all these steps. Hundreds of thousands of dollars is likely minimizing the cost here. In the Fortress Bible Church case, the court was presented with a situation where I believe the delays that were created were measured at the length of about five and a half years. And this is submitting a similar type of application to a village that has already been proven to discriminate against Hasidic Jews here. So to simply suggest that an application should simply be submitted is to again subject Tartikoff to likely many, many years, a great amount of resources, to get somewhere that the village again lacks discretion to grant. The only way potentially is to change the laws themselves, and again, that is contrary to the language of Pactel. Thank you very much. Thank you, Your Honor. Those are your arguments. We'll reserve decision.